# UNITED STATES DISTRICT COURT
for the
District of Arizona

DOA
9-28-19

| United States of America | ) |
| v. | ) Case No. 19-8439 MJ |
| Jodi Danielle Moneymaker, | ) |
| Miguel Angel Gonzalez, | ) |
| USC | ) |
| *Defendants* | |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

### Count 1:

On or about September 28, 2019, at or near Gila Bend, in the County of Maricopa, in the District of Arizona, Jodi Danielle Moneymaker and Miguel Angel Gonzalez, knowing and with reckless disregard of the fact that certain aliens, Roberto Arenas-Caselin and Marcos Felipe-Mendez, had come to, entered, and remained in the United States in violation of law, did transport and move said aliens, Roberto Arenas-Caselin and Marcos Felipe-Mendez, within the United States by means of transportation and otherwise, in furtherance of such violation of law; in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii).

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

REVIEWED BY: AUSA Kyra Goddard

_____
Signature of Complainant
Jon Jenkins
U.S. Border Patrol Agent

Sworn to before me and subscribed telephonically, this 29th day of September, 2019.

_____
Signature of Judicial Officer
Honorable John Z. Boyle
United States Magistrate Judge

## STATEMENT OF PROBABLE CAUSE

1. Your affiant is a Border Patrol Agent with U.S. Border Patrol, U.S. Customs and Border Protection. I have learned about this investigation and the facts contained therein from direct participation in the investigation and from the reports and communications of other agents.

2. On September 28, 2019, Border Patrol Agent (BPA) Luke Youngstead was performing his assigned duties as the detection canine handler at the State Route 85 immigration checkpoint near Gila Bend, in the District of Arizona. At approximately 8:00 a.m., a gray Chrysler 300 pulled into the primary inspection area.

3. Agent Youngstead's canine, Jerry-E, is certified to detect concealed humans, the odors of cocaine and its derivatives, marijuana and its derivatives, heroin and its derivatives, methamphetamine and its derivatives, and ecstasy. Agent Youngstead and Jerry-E were positioned north of the vehicles in the primary inspection area in order to utilize the wind coming from the south to perform non-intrusive sniffs of vehicles passing through the checkpoint. Agent Youngstead was positioned approximately five feet north of the primary inspection area and three feet to the passenger side of the vehicles in the inspection area. Jerry-E had sniffed approximately 20 vehicles before encountering the Gray Chrysler 300. Prior to the vehicle approaching, Jerry-E was standing on all four paws and his tail was hanging limp. When the Chrysler approached, Jerry-E's ears became erect, he shut his mouth and began sniffing

excitedly, pulling on the leash in a strong manner towards the car. Jerry-E began sniffing along the passenger door, along the rear of the vehicle, and continued to trace odor to the rear driver side door handle. Jerry-E turned perpendicular to the vehicle and had a pinpoint stare at the door handle but did not sit. Agent Youngstead asked the primary agent to direct the vehicle into the secondary inspection area for further inspection.

4. Agent Youngstead took Jerry-E back to his service vehicle and placed him in the kennel area of the vehicle. In the secondary inspection area, Agent Youngstead identified himself as a Border Patrol Agent and told the driver, later identified as Jodi Danielle Moneymaker, that he had a positive canine alert to the vehicle. Agent Youngstead then asked for consent to do a search of the vehicle. Moneymaker stated the vehicle was not hers. The passenger, later identified as Miguel Angel Gonzalez, stated it was his rental car and denied consent to search the trunk and interior of the car. Agent Youngstead acknowledged the declination and asked Moneymaker where they were coming from. Moneymaker responded that they were coming from "Pia Oik." Agent Youngstead asked Moneymaker to turn off the vehicle. He then asked that she and Gonzalez exit the vehicle and sit on a nearby bench. Both subjects were compliant; Gonzalez made a call on his cellphone to someone he claimed was his attorney. Agents could hear him tell the person on the phone that he was being illegally detained at a checkpoint.

3

5. Agent Youngstead retrieved Jerry-E from his service vehicle and walked to the gray Chrysler. Jerry-E began drafting towards the vehicle several times without being presented. Jerry-E began sniffing the back door and stared at the rear door handle on the driver's side. Agent Youngstead searched the immediate area of the rear door but did not find any contraband.

6. Arizona Department of Public Safety Trooper Jose Aguilar was parked at the Immigration Checkpoint observing traffic traveling southbound on State Route 85. After seeing Agent Youngstead send the Chrysler to secondary inspection, Trooper Aguilar came over to provide back up. Agent Youngstead talked to Trooper Aguilar about the alerts from his canine to the vehicle. Agent Youngstead explained with the wind traveling over the rear of the vehicle, it would be pushing the odor to the front of the vehicle and could be why Jerry-E was getting alerts to the door. Trooper Aguilar then asked to see identification from Moneymaker and Gonzalez in order to run his own record checks independent of Border Patrol. BPA Youngstead completed his search of the area inside the vehicle that his dog was concentrating on and informed Moneymaker and Gonzalez that he were no longer detaining them for U.S. Border Patrol purposes. Trooper Aguilar continued detaining them while their records returned. Trooper Aguilar then informed Agents that both subjects had confirmed open warrants out of Maricopa County. Trooper Aguilar stated he would be arresting and booking them for the warrants and that he was waiting on Buckeye Municipal

Police to send an officer to the checkpoint to help transport one of the individuals since it is against his department's policy to transport the male and female individuals together after an arrest. Trooper Aguilar approached Moneymaker and Gonzalez to inform them of their warrants and to tell them he was placing them under arrest. After speaking with them, Trooper Aguilar decided he would transport Moneymaker and Gonzalez to the Bond Clerk in Phoenix to let them pay their fines so they could be released. Trooper Aguilar and the Border Patrol Agents on scene waited for approximately another 1.5 hours to let Moneymaker and Gonzalez make contact with friends and family to get their bond money. Trooper Aguilar then informed Moneymaker and Gonzalez that he was going to have to arrest and book them due to the Bond Clerk not being open on Saturday but that he would wait a bit longer to allow Moneymaker to find someone to come collect her dog from the checkpoint.

7. During the encounter, Agent Youngstead observed Moneymaker was very nervous and was making unprovoked statements about her warrants and her criminal history. Moneymaker repeatedly asked if she was going to jail. Gonzalez kept asking if he could get someone to come to the checkpoint to pick up the car and the dog that was in the car. Both Moneymaker and Gonzalez were very concerned with having someone get their vehicle.

8. Trooper Aguilar then stated he needed to inventory the car since he was arresting Moneymaker and Gonzalez for their outstanding warrants. Upon opening the trunk of

the vehicle, Agent Youngstead found three individuals dressed in camouflage. The individuals appeared to be extremely sweaty, and were crammed into the trunk. These individuals were in the trunk for at least two hours throughout the encounter. Although it was approximately 91 degrees outside and the vehicle was parked in the sun, at no point did Moneymaker or Gonzalez mention the individuals in the truck or express any concern for their wellbeing.

9. Agent Youngstead helped the individuals out of the trunk and noted that they appeared to be lethargic and in a weakened state. When the individuals were removed from the truck, Gonzalez was heard telling Moneymaker to "keep [her] mouth shut, don't say anything." Gonzalez also told Moneymaker to "tell [the agents] [Gonzalez and Moneymaker] left [their] trunk open at a gas station and [the individuals] must have climbed in." Gonzalez and Moneymaker were then placed under arrest by the U.S. Border Patrol for a violation of 8 U.S.C. § 1324. As Gonzalez was escorted to a Border Patrol Vehicle, he told the individuals that were removed from the truck not to say anything. Agent Youngstead called for the Border Patrol Emergency Medical Technician to come to the Immigration Checkpoint to evaluate the individuals that were in the trunk. The individuals all declined medical attention.

10. The individuals in the truck were identified as Roberto Arenas-Caselin, Marcos Felipe-Mendez, and Jose Mateo Arenas-Caselin. Agent Youngstead conducted an immigration inspection and determined that the three subjects were citizens of Mexico

who were illegally present in the United States and had not been inspected, admitted, or paroled by an immigration officer. None of the individuals in the truck were in possession of any documents permitting them to enter, remain in, or travel through the United States. All five individuals were transported back to the Ajo Border Patrol Station for further processing.

11. On September 28, 2019, Miguel Angel Gonzalez was read his Miranda rights. Gonzalez willingly acknowledged he understood his rights and declined to answer questions.

12. On September 28, 2019, Jodi Danielle Moneymaker was read her Miranda rights. Moneymaker willingly acknowledged she understood her rights and decided to answer questions without a lawyer present. Moneymaker stated that she and her friend, Miguel Angel Gonzales, were supposed to go to Ajo, Arizona to talk to a friend. Moneymaker stated they drove past Ajo, and Gonzalez told her that they were going to drive further. Moneymaker stated that as Gonzalez was driving, he was at times speaking to someone on the phone in Spanish.

13. Moneymaker stated that she did not know what road they were driving on but remembered passing a tow yard near a dirt road and said they were trying to find a road near two water tanks. Moneymaker said she saw a few mud hut structures and trailers before arriving at a house. Moneymaker told agents that when they arrived at

the house, Gonzalez got out and told her to wait for him by the car. Moneymaker relayed that she got scared and followed Gonzalez into the house where she saw Gonzalez talk to a few males. She said Gonzalez was also supposed to talk to a female but she never came out. On the way home, Moneymaker stated that she drove because the Gonzalez was driving erratically and it was making her nervous. While they were driving, Gonzalez told Moneymaker to let him know when they passed the checkpoint.

14. Roberto Arenas-Caselin also agreed to provide a statement. Arenas-Caselin stated he is a Mexican national without proper documentation to enter or remain into the United States. Arenas-Caselin told agents he crossed the United States/Mexico Border with two other individuals, later identified as Jose Arenas-Caselin and Marcos Felipe-Mendez. Arenas-Caselin told agents they walked to a road in the middle of the desert where they asked for a ride from a man and a woman who pulled over. Arenas-Caselin said the man spoke broken Spanish and both the man and the woman said they would give them a ride but they had to ride in the trunk of the car; Arenas-Caselin was unsure if this was a normal practice. Arenas-Caselin told agents he and the other men were locked in the trunk for approximately three hours and that while it was cool at first, it became hot. He also said that the couple had not showed them how to get out of the trunk area. Arenas-Caselin stated that the driver and passenger did not request any payment and were going to give them a ride north to Phoenix, Arizona.

15. Arenas-Caselin was shown a photo line-up to see if he could identify any subjects related to this event. Arenas-Caselin was not able to identify any of the individuals in the photo line-up as being the driver or passenger. While conducting the interview, Border Patrol Agent Michael Hector observed that Arenas-Caselin seemed nervous; he would keep his hands tucked tightly between his legs, would not make eye contact with the BPA Hector, and was trying to give as little information as possible.

16. Marcos Felipe-Mendez also agreed to provide a statement. Felipe-Mendez said he is a Mexican citizen without proper documentation to enter or remain into the United States. Felipe-Mendez stated he crossed the border with two other individuals and that the group made their way to a highway where they met a vehicle and asked for a ride. Felipe-Mendez stated they got in the back seat of the vehicle and from there, got into the trunk. Felipe-Mendez stated he did not pay anyone to enter the United States. Felipe-Mendez was shown a photographic lineup of individuals related to this event and he identified Jodi Danielle Moneymaker. Felipe-Mendez was unable to identify anyone else associated with this event.

17. For these reasons, your affiant submits that there is probable cause to believe that on or about September 28, 2019, at or near Gila Bend, in the County of Maricopa, in the District of Arizona, Jodi Danielle Moneymaker and Miguel Angel Gonzalez

knowingly and in reckless disregard of the fact that certain aliens, namely Roberto Arenas-Caselin and Marcos Felipe-Mendez, had come to, entered, and remained in the United States in violation of law, did transport and move said aliens within the United States by means of transportation and otherwise, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

_____
Jon Jenkins
U.S. Border Patrol Agent

Sworn to before me and subscribed telephonically
This 29th day of September, 2019

_____
John Z. Boyle
United States Magistrate Judge